# CHARLESTON.

AMHERST COAL CO. v. PROCKTER COAL CO.

Submitted October 30, 1917.     Decided November 6, 1917.

APPEAL AND ERROR—*Order Dissolving Injunction—Appeal—Reinstatement and Remand.*

> Upon an appeal from an interlocutory order dissolving an injunction upon bill and answer accompanied by affidavits, this court does not consider the pleadings and informal proof further than is necessary to enable it to determine the propriety and correctness of the dissolution order. It will not in this manner determine the rights of the parties, but will reinstate the injunction and remand the cause for formal proof by the usual and regular procedure, where it appears the injunction was dissolved prematurely.

Appeal from Circuit Court, Logan County.

Suit for injunction by the Amherst Coal Company against the Prockter Coal Company. Decree for defendant, and from an order dissolving the injunction plaintiff appeals.

*Reversed, injunction reinstated, cause remanded.*

*Brown, Jackson & Knight, Lilly & Shrewsbury,* and *Campbell, Brown & Davis,* for appellant.

*Chafin & Bland,* and *Holt, Duncan & Holt,* for appellee.

LYNCH, PRESIDENT:

The facts upon which the right of the Amherst Coal Company to the protection of the injunction order of December 12, 1916, to some extent depend are stated in the opinion reported in 92 S. E. 253. The case then was decided upon two motions, both overruled; one to submit for decision upon the merits in advance of the date regularly fixed therefor upon the docket, the other to dismiss the appeal, as allowed in §26, ch. 135, Code. It now is to be determined upon the same state of facts presented, as before, by affidavits, in its regular order upon the court docket, on an appeal from an order by the circuit court dissolving the injunction.

Necessarily what may properly be said at this time and in

these circumstances must be limited and restricted to an adjudication of the right of the plaintiff to preserve the property in the condition as it was upon the award of the injunction until the case is matured fully for final hearing upon its merits, and not upon *ex parte* affidavits, where no opportunity is afforded to subject the statements therein made to the usual test of a cross-examination.

The two vital and dominant questions arise out of the rights and privileges granted or reserved in the joint lease of the Hector Coal Land Company and the Brownings to plaintiff, Amherst Coal Company, dated May 1, 1912, in and upon one tract of land, and out of the rights and privileges granted or reserved in the lease of the Altizer Coal Land Company and the Brownings to the Prockter Coal Company, dated April 29, 1915, in and upon another and different tract of land. The two tracts leased are separated only by Buffalo creek, a tributary of Guyandotte river in Logan county. The rights granted to the lessee in each lease are full and adequate to effectuate the purpose of each grant both as to surface and mining rights, including the right to mine, remove and market the coal, to manufacture it thereon into coke and market that commodity, but not beyond certain well defined limits and restrictions or reservations contained in each lease. Among the things granted to the Amherst Coal Company, "for coal mining and coke making purposes only", are, so far as now pertinent, the right to dig, shaft, mine and carry away coal in, under and upon the premises; to manufacture and carry away coke and other coal products; to take and use such water, stone and sand as may be needed or necessary for use upon the premises in connection with the operations contemplated by the lease, and the use of sufficient of the surface of the lands for building and other purposes as necessary in such operations. But the lessors reserve certain kinds and dimensions of timber, with the privilege of its removal; the rights of way over the land theretofore granted to the Peytonia Land Company and to the Chesapeake & Ohio Railway Company; the surface of two tracts, each containing approximately two acres, one near the mouth of Robinette branch of Buffalo creek

and one where L. H. Toler resides, each of the two acres to be located by agreement as therein provided but "in such manner as not to interfere with mining operations on said land"; also the right to farm such portions of the 237 acre tract, part of the leased premises, as the lessors may elect, but "such farming shall be carried on upon such portions of said tract as will not interfere with the mining operations of the lessee"; also the reservation of the oil and gas, and the right to drill therefor and market the same, with like provision for non-interference with the rights of the lessee. These express reservations are important now only in so far as they disclose an intention not to suffer or permit the exercise of the rights reserved to hamper or impede the lessee in the full use and enjoyment of the entire leased premises even as to some of these reserved rights and privileges.

But the significant and vital provisions, bearing upon the questions at issue between the lessees, are, first, the reservation in the Amherst lease of "the right to connect any switch or siding with the C. & O. Railway Company's railroad on the north side of said road for the purpose of operating any coal under the lands of the said parties of the third part (the Brownings) on the north side of said creek or other lands adjoining thereto. But said switches or sidings are not to interfere with the switches or sidings and operations of the lessee herein". Second, the grant to the lessees in the Prockter lease of "the right to connect any switch or siding with the C. & O. Railway Company's railroad on the north side of said road, for the purpose of operating the coal under the demised premises, but said switches and sidings are not to interfere with the switches or sidings and operations of the Amherst Coal Company; the above rights so granted in this clause being reserved in that deed of lease executed by the Hector Coal Land Company and others to the Amherst Coal Company dated the first day of May, 1912. * * It is the intention of granting to the lessees such rights as are indicated in this article which were reserved in such last mentioned deed of lease".

Assuming to act under the combined authority of the rights

reserved by the lessors in the lease to the Amherst Coal Com-- pany and the grant by the Altizer Coal Land Company and others to the Prockter Coal Company, the latter company undertook, in the manner and for the purpose outlined and described in the former opinion, to construct the coal mining and operating appliances, facilities and structures the prose- cution of which was enjoined, whereby and whereon to haul or convey the Eagle seam mined under the Prockter lease, from the land leased to it, through openings made opposite the mouth of Robinette branch, across part of the land leased to the Amherst Coal Company, to the tipple con- structed by the Prockter Coal Company on one of the two acre parcels near the railroad reserved by the Brownings in the Amherst lease. Claiming that these structures, if con- structed and operated for the purpose indicated, would in- terfere with and obstruct the exercise of its leasehold rights and privileges, in violation of the express terms of the grant to it, the Amherst Coal Company resorted to the process of injunction, with the result noted in the former opinion. The cause now is heard upon the same informal proof presented upon the former motions, then presented and discussed.

But whether the structures so proposed will so far obstruct or impede the exercise of the leasehold rights conferred upon the Amherst company as unjustly to curtail the enjoyment of such rights in derogation of the contract; and whether the Prockter Coal Company is clearly within the protection of its contract in the erection of the proposed structures, are questions that must await further investigation and proof. The cause has not proceeded to the stage proper for final adjudication upon these matters. The affidavits are so far contradictory and inconclusive as to forbid a just determin- ation of the controversy upon these vital issues. Besides, such an adjudication would foreclose further inquiry as to them. For the purposes of the cause, it would operate to conclude the parties upon these subjects.

An examination and careful scrutiny of the affidavits does, however, lead to the conviction that the circuit court of Logan county dissolved the injunction prematurely. It re-

fused the request of the plaintiff to defer action on defendant's motion, timely made, to dissolve, until the cause was matured for final hearing, and accompanied the request by information of an intention on its part to proceed promptly in the taking of depositions to sustain the allegations of its affirmative pleadings. This request, we think, ought to have been granted. It must be assumed that the proffered diligence in the preparation for final hearing was made in good faith. But, if not, the court could have required activity and energetic action, in the absence of such diligence. It could have fixed a reasonable time and convenient place therefor, and provided in the order when each party should begin and conclude the taking of proof in chief and in rebuttal, and thereby expedited the hearing, and in the meantime stayed action upon the motion to dissolve. The request made by the plaintiff was fair and reasonable; and, in the circumstances and in view of the important rights involved, not violative of the rule which in injunction proceedings requires the plaintiff therein always to be ready to meet a motion to dissolve. The delay, if granted, would have deferred action only from December 22, 1915, to January 8, 1916. Besides, the course proposed by plaintiff, if approved and followed, may perhaps have caused less inconvenience and delay than has the present appellate process.

The affidavits filed on behalf of each of the lessees are narrative in form, and probably state only such facts and circumstances as enabled the affiants to form a judgment, opinion or belief upon the feasibility, economy and expediency of the proposed mining plans and appliances, and the effect the proposed structures and ways likely would have upon the leasehold rights and privileges of the respective parties. This informal proof seems to have been framed in evidentiary form exclusively to serve the interest of the company that procured it in each instance; and perhaps, to render it most effective for that purpose, the affiants may have excluded or ignored some facts, conditions or circumstances that a cross-examination might have revealed or divulged. Conflicting and inconclusive, the affidavits present for consideration and

decision a situation of grave concern to each litigant.    The improvements proposed and in process of construction are of such magnitude and importance as to warrant careful thought and investigation.    Their effect and bearing upon the leasehold rights of the parties appear to be serious—too serious indeed to be adjudged rightly only upon the most mature reflection upon all phases of the inquiry, such reflection as seems impossible upon the facts now before us. Giving to the affidavits the probative force and value to which they are entitled, they are read now only to determine the correctness and propriety of the order dissolving the injunction as the case now appears.    The final adjudication must await a full and complete development of the essential facts by the usual procedure.

It is therefore sufficient to say and hold that, in the meantime, it is expedient and proper to maintain the property in its present status by a reinstatement of the injunction until the merits of the case may properly be established by testimony subjected to the test of a cross-examination.    Being of that opinion, we reinstate the injunction, and remand the cause for further proceedings.

*Reversed, injunction reinstated, cause remanded.*